■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v KEVIN CHERRY, Appellant. [850 NYS2d 645]—

Kane, J. Appeal from a judgment of the County Court of Albany County (Breslin, J.), rendered January 20, 2005, upon a verdict convicting defendant of the crimes of murder in the first degree (three counts), burglary in the first degree, robbery in the first degree (two counts), murder in the second degree (two counts), burglary in the second degree and attempted robbery in the first degree.

In March 2001, two men pushed their way into an apartment, threatened two residents with a handgun, bound the residents with electrical tape and stole several items, including a cellular phone and a loaded 12-gauge shotgun. In a separate incident in August 2001, two victims were killed by shotgun wounds to the back and head. Police linked defendant to both crimes, leading to a 10-count indictment charging him with burglary in the first degree, burglary in the second degree, and robbery in the first degree (two counts) related to the March incident, and murder in the first degree (three counts), murder in the second degree (two counts) and attempted robbery in the first degree related to the August homicides. A jury convicted defendant on all counts. County Court imposed the maximum sentence on each count, with all sentences to run consecutively. Defendant appeals.

County Court properly denied defendant's motion to sever the counts related to the March incident from those related to

the August homicides. The People may join multiple offenses, "even though based on separate and distinct criminal transactions, . . . if they are of such a nature that proof of either offense would be material and admissible as evidence-in-chief upon the trial of the other" (*People v Bongarzone*, 69 NY2d 892, 895 [1987]; *see* CPL 200.20 [2] [b]; *People v Griffin*, 26 AD3d 594, 594-595 [2006], *lv denied* 7 NY3d 756 [2006]). Evidence tying the stolen shotgun to the homicides rendered proof of the March incident material and admissible to the August incident, especially on the issue of the killer's identity (*see People v Murphy*, 28 AD3d 1096, 1097 [2006], *lv denied* 7 NY3d 760 [2006]; *People v Alvarez*, 150 AD2d 470, 470 [1989], *lv denied* 74 NY2d 804 [1989]). Once the offenses were properly joined, the court lacked authority to order severance (*see* CPL 200.20 [3]; *People v Bongarzone*, 69 NY2d at 895).

The convictions were supported by legally sufficient evidence and not against the weight of the evidence. Defendant acknowledged that proof of the crimes existed; the only issue was the identity of the perpetrator or perpetrators. Regarding the March robbery, one of the apartment residents positively identified defendant as the robber who threatened the victims with a handgun and stole the cellular phone and shotgun. Although the other resident could not be certain regarding his identification of defendant, he testified that he believed defendant was one of the robbers. The two residents' testimony revealed a single version of the robbery. Additionally, a call made minutes after the robbery on the stolen cellular phone was placed to defendant's girlfriend.

Regarding the August homicides, a ballistics expert matched the four shotgun shell casings found at the scene to each other and to a casing retrieved by the owner of the shotgun stolen in March. Calls from the cellular phone of one victim were placed to defendant's uncle and his girlfriend. Calls from pay phones between the crime scene and defendant's family home were placed to his uncle's girlfriend, who testified that defendant called for jumper cables prior to the shootings and for a ride afterward. The victims were found in a car with the hood up, motor running and jumper cables still attached to the battery. Defendant wrote anonymous letters to the District Attorney and court stating that he was at the scene but did not commit the murders; he noted that some friends in the Bloods gang shot the victims and the motives were the drug trade and respect. A witness also testified that on the night of the murders she overheard defendant state, "I just shot two people." Viewing this evidence in a light most favorable to the People, it was

sufficient to establish that defendant committed all charged crimes (*see People v Bleakley*, 69 NY2d 490, 495 [1987]; *People v Rivera*, 42 AD3d 587, 588-589 [2007], *lv denied* 9 NY3d 880 [2007]). While a different verdict would not have been unreasonable, after granting due deference to the jury's credibility determinations we find the verdict in accord with the weight of the evidence (*see People v Romero*, 7 NY3d 633, 643-644 [2006]).

County Court did not err in admitting testimony by an expert on gangs. The detective described the geographic areas ascribed to the local gang, the structure, common identifiers and basic background on gangs. This information provided a context for defendant's letters which identified him as a member of the gang and explained a possible motive, namely the perceived disrespect by one victim who was not a gang member but sold drugs in an area controlled by the gang (*see People v Faccio*, 33 AD3d 1041, 1042 [2006], *lv denied* 8 NY3d 845 [2007]; *People v Williams*, 28 AD3d 1005, 1008 [2006], *lv denied* 7 NY3d 819 [2006]; *see also People v Edwards*, 295 AD2d 270, 271 [2002], *lv denied* 99 NY2d 557 [2002]). While the court should have provided the jury a limiting instruction (*see People v Brown*, 97 NY2d 500, 506 [2002]), that error was waived by defendant's failure to request such an instruction or object to the court's final charge (*see People v Wright*, 5 AD3d 873, 876-877 [2004], *lv denied* 3 NY3d 651 [2004]; *People v Mendez*, 304 AD2d 481, 482 [2003], *lv denied* 100 NY2d 584 [2003]).

Contrary to defendant's contention that the jury charge on identity was insufficient, County Court stated at least three times during its charge that all elements, including defendant's identity as the perpetrator, had to be proven beyond a reasonable doubt, and defendant did not request any more specific charge (*see People v Knight*, 87 NY2d 873, 874-875 [1995]; *People v Mane*, 36 AD3d 1079, 1081 [2007], *lv denied* 8 NY3d 987 [2007]; *People v Barton*, 301 AD2d 747, 747-748 [2003], *lv denied* 99 NY2d 625 [2003]). Eyewitness identification of the March crimes and an admission of the August crimes constituted direct evidence, rendering the charge on direct and circumstantial evidence correct (*see People v Roldan*, 88 NY2d 826, 827 [1996]; *People v Golston*, 13 AD3d 887, 889-890 [2004], *lv denied* 5 NY3d 789 [2005]). The admission of a bulletproof vest and ammunition seized from defendant's grandmother's house was error because those items were not adequately connected to defendant, but their admission was harmless here (*see People v Martin*, 8 AD3d 883, 887 [2004], *lv denied* 3 NY3d 677 [2004]).

The prosecutor did not commit misconduct in his summation. His statements constituted fair comment on the evidence or a

reasonable response to the defense summation (*see People v Grady*, 40 AD3d 1368, 1374-1375 [2007], *lv denied* 9 NY3d 923 [2007]).

Counsel provided defendant effective assistance. Several of defendant's arguments constitute attacks on counsel's strategies, which we will not second-guess. While we have determined that County Court should have provided limiting instructions regarding the gang testimony and counsel did not request such instructions, the failure to make that request could have been a strategic decision to avoid highlighting that testimony. Considering the context of the entire prosecution, including the suppression of defendant's oral and written statements to police, defendant received meaningful representation (*see People v Van Ness*, 43 AD3d 553, 555-556 [2007]; *People v Timberlake*, 42 AD3d 761, 762 [2007]).

County Court erred in imposing consecutive sentences for each of the 10 counts charged. Although never pointed out to the trial court, several of the charges should have been dismissed as lesser included offenses (*see* CPL 300.40 [3] [b]; *People v Horton*, 46 AD3d 1225 [2007] [decided herewith]). In the March incident, burglary in the second degree (count 2) was a lesser included offense of burglary in the first degree (count 1) (*see People v Morales*, 36 AD3d 957, 958 [2007], *lv denied* 8 NY3d 988 [2007]; *People v Beverly*, 35 AD3d 754, 754 [2006], *lv denied* 8 NY3d 981 [2007]). In the August incident, the two counts of murder in the second degree (counts 8 and 9) were lesser included offenses of two counts of murder in the first degree (counts 5 and 6) (*see People v Miller*, 6 NY3d 295, 303 [2006]; *People v Horton, supra*; *People v Jackson*, 41 AD3d 1268, 1270 [2007]). Other counts required concurrent sentences because a single act constituted one offense and a material element of another offense (*see* Penal Law § 70.25 [2]). Two of the murder in the first degree counts (counts 5 and 6) were based upon the murder occurring in the course of an attempted robbery (count 10), making the latter crime an element of those murder counts subject to concurrent sentencing (*see People v Faulkner*, 36 AD3d 951, 953 [2007], *lv denied* 8 NY3d 922 [2007]). Similarly, concurrent sentences are required for the count of murder in the first degree based upon the murder occurring during the commission of another murder (count 7) and the other counts of murder in the first degree (counts 5 and 6) (*see People v Rosas*, 8 NY3d 493, 498 [2007]; *People v Jackson*, 41 AD3d at 1270).

Cardona, P.J., Peters, Spain and Rose, JJ., concur. Ordered that the judgment is modified, on the law, by reversing

defendant's convictions on counts 2, 8 and 9 of the indictment; dismiss said counts, vacate the sentences imposed thereon and direct that defendant's sentences on counts 7 and 10 of the indictment shall run concurrent with the sentences on counts 5 and 6 of the indictment; and, as so modified, affirmed.